Our last case this morning is Wireless Agents v. Sony Ericsson. Mr. Schor? Your Honor, for the record, my name is Michael Schor, partner in Schor-Chan Bragolone in Dallas, Texas, and I'm here with Alfonso Chan representing Wireless Agents. If it may please the Court, this appeal involves, it's an appeal from the denial of a motion for preliminary injunction. The sole issue on the appeal is a purely legal issue, as the Court only denied the preliminary injunction on one basis, the lack or the presence of an alphanumeric keyboard in the accused's devices. The alphanumeric keyboard was construed by the Court as to require what the Court stated was a substantially full set of alphanumeric keys. This was the trial court's only basis for denying Wireless Agents a motion for preliminary injunction, and that sole basis is in the memorandum of opinion and order at page 16. I went through the specification and found about six instances in the specification where they're talking about a full set of keys, and they're distinguishing something that you have to, the standard 12 set of keys. Throughout this whole thing, we're talking about a device configuration that includes a full keyboard with all of the letters. Why isn't that specification, column 4, 6, 7, 12, 13, that I found pretty important? Well, it would be important, except that all of those are descriptions of a preferred embodiment, or statements out of the objects. Well, except that, no, that doesn't say that. Column 4, the device configuration of the present invention provides the following distinct features. An alphanumeric data means that is central, suitable for use without a pointing device, and for rapid entry, talking, going on. The device in column 6, the device of the present invention includes at least an alphanumeric such as a full QWERTY-type keyboard. That's describing the present invention, not an embodiment. Well, actually, the word such as, I think, is a key term. It says such as. It doesn't say that that's inclusive. And basically, when it gets right down to it, where the core went wrong is because it looked at the term alphanumeric keyboard and said that the meaning of alphanumeric keyboard isn't immediately apparent to a person of ordinary skill in the art. An alphanumeric keyboard, which is all the claim says, it says alphanumeric keyboard, that's apparent to a layperson. An alphanumeric keyboard is a set of keys that has alphabetic characters and numbers. That's an alphanumeric keyboard. I don't think that anyone, and as a matter of fact, I have both one of the accused devices in my pocket, and I don't think anybody, every single letter of the alphabet is there, and integers 0 through 9 are there. That's an alphanumeric keyboard. We don't have any dictionary definitions that say that that's what an alphanumeric keyboard is, right? Well, actually, we have a dictionary definition of alphanumeric, and we have a dictionary definition of keyboard, and I don't think it takes a great logical leap to figure out that if you have every single letter of the alphabet and you have every integer 0 through 9 and it's on a key, a set of keys, that's an alphanumeric keyboard. Yeah, but what difference does it make if Judge Rader points out the specification makes clear that in this patent, alphanumeric keyboard means a substantially full set of keys? Two things. One, I don't think that the specification does anything other than give examples, and let's look at the language that the court actually referred to, and this is, I think, very important. It says the keyboard may be a keyboard with a layout such as common QWERTY layout, but need not be limited to this particular layout. Other layouts may include the Fatali layout, the Dvorak layout, et cetera. I mean, what you basically have here is you have a plain term, and the memorandum opinion in the court or any other alphanumeric layout includes a substantially full set of alphanumeric keys. Don't you agree that that latter language is referring to something which has more than 12 or 14 keys? Absolutely not. I think if you have a set of keys that have every single letter of the alphabet, that's a substantially full set of alphabetic characters, and you have 0 through 9, that's a substantially full set of integers. You can't have more. I mean, frankly, every single letter of the alphabet and every single number in the Arabic numeric system is available on this keyboard. So if you have one key and you can get all the letters in the alphabet by pushing it up to 26 times, that would be a full set of alphanumeric keys, right? Well, yeah, I think you can always, no one would buy that device, and I think you can always take any definition, logical or illogical, to an extreme, but I don't think that's how any person of ordinary skill in the art would read the patent. And that raises a different question. But how does the language and the specification itself, when it calls a full alphanumeric keyboard, what does a full alphanumeric keyboard mean for a person of ordinary skill in the art? Another good point. If the claim had meant to include full alphanumeric keyboard, it would have done exactly what it did in the specification, and it would have said full alphanumeric keyboard. And this court has said repeatedly, if you have a generally understood term, you include subspecies or subtypes as well as the general type. And that's exactly what the court here, that they took language from the specification, misquoted incomplete language from the specification, and they put together a definition, and there is nothing. Now let's look at the other angle on this, though. When the specification does mention a 12-pad, a 12-key, 12-digit keypad, it doesn't refer to it as a alphanumeric keyboard, does it? The conventional mobile phone configuration has the following disadvantages. A keypad is typically a 12-digit keypad, et cetera. So it's saying, that's bad. That's not the invention. It's not the alphanumeric keyboard. That's column 2, lines 45 to 50. Well, actually, that's incorrect in that it also, in the quote the court used, it doesn't use the word alphanumeric. Keyboard and alphanumeric keyboard are used interchangeably throughout the specification. The quote that the court actually used, they read in the word alphanumeric. The quote is, quote, the keyboard may be a keyboard with a layout such as a common QWERTY layout. So when the court, when the patentee used keyboard, it used it interchangeably with alphanumeric keyboard. So when you're talking about the keyboard on a regular 12-digit keypad phone, that's exactly the same language, just keyboard, not using the word alphanumeric, that we use in column 5 that the court referred to. There's nothing special about that at all. And what it basically comes down to is, I believe, and I think anyone who would read this and look at this, that's an alphanumeric keyboard. And so the question is, if you have an alphanumeric keyboard and the claim says alphanumeric keyboard. I bet you say anybody who would look at it would call it an alphanumeric keyboard. I mean, what's there in the record that says anybody who would look at it would call it that? Dr. Deffner's report that was submitted in support of the motion of preliminary injunction made it quite clear. And as a matter of fact, we also have in the record, Sony Ericsson's own patents on their own phones call this an alphanumeric keyboard. I mean, they call it that. So you have our expert, you have Sony Ericsson's inventors, you have inventors from Sony, all of those patents. What did your expert say? Did he come up with any contemporaneous documentation to support that interpretation? Oh, absolutely. He came up with Sony Ericsson's patents. Yeah, but those patents don't really use that terminology. They use the term alphanumeric keypad, and they call what they, the 12-digit keypad an alphanumeric keypad. And again, so if you're going to take a term that I would think is ordinarily and easily understandable and you're going to change it, first of all, the court never says in the opinion this is a lexicographer case. It doesn't say that anywhere. And there is nothing about this little quote that the court uses or misquotes that says this is going to be a definition. And, of course, he can't say it's a lexicographer case because a definition, a special definition, a specification is not going to include terms like maybe, but need not be limited to, may include. This is inclusive, not exclusive language. So it's not a lexicographer case. The second is the court did not find a disclaimer. There is nowhere in the opinion where a disclaimer or a disavowal is even mentioned by the court. But the 12-digit keypad is described in the specification as extremely slow, awkward, error-prone, and not appropriate for a device intended to transfer textual data. Then how is this language supposed to cover a 12-digit keypad? Well, let me give you an easy example of this. There's lots of things that this, and if you look at the objects of the invention, the object of the invention and the only objects of the invention relate to the idea that you can have a larger screen on a smaller device and save space for when it's not in use. In other words, it's a constantly visible display, and when it's not in use, it's small. Here you have a smaller device with a bigger screen. That's the object of the invention. In fact, this company, the company that invented it,  and so to get people to use their other inventions and their other products as content delivery, they had an interest in making devices more amenable to content delivery on the cell phone. That's the only reason why these apparatus patents were even filed for, was to make their content patents more accessible. So you have here a device, it's smaller in size, but it has a bigger screen. That's the whole idea. When you open it up, you have two choices you can make. If you want miniaturization, it's still almost the same size, even in the open position. If you have miniaturization, you might use the same size keyboard. However, if you wanted to have a device where this was higher or bigger, slightly larger, then you could have either a fuller keyboard, or you could have keys that were much larger, or you could have the same size keys with a stylus or some sort of a toggle switch or something else to make surfing the internet more easier. All of these make it easier. Now, you may choose, instead of making a different size keyboard to take advantage of the space, you may decide that you want to miniaturize. You want an even smaller device that makes it easier to put in your breast pocket. But it doesn't change the object of the invention. The object of the invention always was... But see, we're not interested in the object of the invention. We're interested in the language of the claim. And the language we're interested in is alphanumeric keyboard. Again, back to Column 5. The alphanumeric keyboard is easier and faster to use than the keypads and touchscreens on mobile phones and personal digital assistants. The keyboard, it goes on to talk about the full QWERTY layout. And again, that is from the specification. It is not from the claim. It was very careful. As a matter of fact, the last language in the specification is the specification should not be read as limiting. It's not intended to be limiting. We are taking the full and plain meaning of the terms in our claims and the term in the claim is alphanumeric keyboard. It's not substantially full set of keys. It's not full alphanumeric keyboard. It's simply alphanumeric keyboard. And if you're going to depart from the plain meaning of an alphanumeric keyboard, there's three ways that you can do that. Did the patentee distinguish the prior art on the basis of that particular embodiment? No. There's nothing in the language used by the court to distinguish the invention based upon the type of alphanumeric keyboard. In fact, multiple variants of alphanumeric keyboards are used. Was there an express disclaimer? The court did not find one, and as a matter of fact, as Mr. Sostek pointed out when he turned in his form, the court granted summary judgment on literal infringement based upon this subsequently, but specifically found no disavowal and said equivalents on a 12-key keyboard were available. So there's no disavowal. Do you wish to save your rebuttal time? I'd like to go about 30 more seconds and save rebuttal time. There you go. And also, there is no language in the specification that says this is an invention. I mean, this is a definition. We define alphanumeric keyboard this way. Yes. Do they give examples, multiple examples of the preferred embodiment, the preferred embodiment being a larger device, not a miniaturized device, a larger device? No. But does that mean that they disclaim the plain meaning of alphanumeric keyboard? Absolutely not. Thank you, Mr. Schor. Mr. Sostek. Thank you. Bruce Sostek for Sony Ericsson Mobile Communications, and I'm here with Rich Winn this morning. And I believe that in characteristic fashion the court has gone right to the heart of the issue, so let me follow up. The court's questions are exactly right. What the court was trying to do below was to determine what is the meaning of alphanumeric keyboard. And the court had ample opportunity to look at the specification in many, many different places, as Judge Rader has identified. The present invention is in the alphanumeric keyboard. And specifically, the court had an opportunity to see what the patentee did in several places. What he did in column two, as you have recognized, is he set out the problem. How do we avoid importing a limitation from the specification? How do we know if we're doing that? Well, you do that by taking the whole by the, that's the classic tension that we face, obviously. That's where Vitronics and all these other cases struggle. But in this case, you say, what did the court, what did the patentee really intend? And you have to read the specification in light of the claims and the claims in light of the specification. And you say, look, am I taking a preferred embodiment, for example, and in a very limited way, importing that embodiment as a limitation on the claim? Just one idea, one concept. Or am I looking to what the patentee really considered to be his invention and saying, in light of the specification which informs these claims, it's clear that what the patentee intended in this instance was something very specific that he's identified. For us in this instance, he said, an alphanumeric keyboard is much better than a 12-digit telephone touch-tone keypad because it allows much more rapid text entry. It's much more capable and accessible for the user to get into. It's intuitive. It's easy. He contrasted that specifically with the language that you've already pointed out on a 12-key keypad where he said, it's slow, it's awkward, it's error-prone. It's not suited to be appropriate for the type of text entry I have in mind for this invention. And so in those instances, we can do only what we can always do. We look to the claims and then we look to the specification which informs those claims and we say, how does this best describe what the patentee intended to be the scope of his invention? Clearly, he said, it is not a keypad. And how do we know? It really goes back to the claim language you cited in column 5, lines 4 through 6, where the invention is described again and he says, the alphanumeric keyboard is easier and faster to use and learn than the keypads and touchscreens on most mobile phones. What he's saying to us clearly, both expressly and by implication is, in this instance, the alphanumeric keyboard is a quality step different. It is different from the touch-tone 12-digit keypad found on a standard mobile phone. And it provides for my invention. What my invention does is it provides for this ease and rapid text entry in that way. And then what he says is, let me tell you what this really is. Let me define for you what alphanumeric keyboard really means. And he goes on in the next several lines and he says, the keyboard may be a keyboard with a layout such as the common QWERTY layout, which is well known to all, but need not be limited to this particular layout. Other layouts may include the Fiddley layout, the Dvorak layout, or any other alphanumeric layout that includes a substantially full set of alphanumeric keys. And that's the language, Judge Gayashe, that you referred to earlier, is the substantially full set of alphanumeric keys. What he's saying is, this is a quantum step up in terms of the ease of the consumer or the user to do what I intend them to do, to do instant messaging, to do chatting, and to do it quickly, easily, and efficiently. And this is what I considered my invention to be when I used the term alphanumeric keyboard. That's really what he said. The notion that this is a full alphanumeric keyboard, the word doesn't distinguish it from some other alphanumeric keyboard. It distinguishes it from the more limited keyboard, the 12-digit mobile phone keypad, that this particular inventor considered to be very inconsistent with the object of his invention, namely the swift, easy, intuitive entry of text on a regular basis. And so that's the distinction that was made there. And so in those respects, I think, you know, it's the constant struggle, but it's the struggle that's clearly what was done. And so when we look at what the judge's charge was on a limited record, on a preliminary record, and we look at what he did, Judge Fitzwater did exactly what you have told him to do in other cases, most notably Phillips and Vitronics and otherwise, but he went back and said, I have this invention, I have the claims, and subject to those claims, I just need to look only to the intrinsic record to figure out what the best application of those claims, what the best definition of this construction happens to be, and that's what he did. He did it carefully. He did it thoughtfully. He gave everybody a lot of time. He allowed several rounds of briefing. And at the end of the day, he looked at this particular claim term and said, I don't need to go to this intrinsic definition. I don't need to go to the dictionary definitions, the extrinsic evidence you offered us. And I don't need to go to this Defner, Dr. Defner expert report, which is clearly extrinsic and conclusory in its nature. All I need is the numerous repetitive references to alphanumeric keyboard within the scope of this patent. And all I need is to look at these claims and look at the specification and know how this term is to be defined. And that's what I have done. And that's really the whole nature of what Judge Fitzwater did in terms of how he came to clearly and correctly follow this court's precedent and this court's direction, come to the right claim term definitions based upon a clear evidence by the patentee of what he intended that term to mean in the scope of his patent. Beyond that, Your Honor, I just really don't know that there's much more to say. I guess I should address very quickly just a quick reference to this disclaimer disavowal. The problem with the disclaimer and disavowal argument is it starts with a fundamentally flawed premise that a keypad is an alphanumeric keyboard. It's very clear that this patent holder distinguished them immediately and did not intend for that keypad to be the keyboard. So if you don't intend for it to be part of the definition of alphanumeric keyboard in the first instance, there's nothing to disavow or disclaim. It just wasn't part of that definition in the inventor's approach from the very beginning. And that's really what happened with respect to that particular issue as it's presented right here. But when you get back, you know, the other thing that I wanted to mention, and I think Judge Dikey mentioned this, there is nowhere anywhere in the record where they're referencing an alphanumeric keyboard as a 12-key keypad from a touch-tone telephone. Nowhere. They may have cobbled together some extrinsic definitions of a keyboard here and a keypad here or alphanumeric here, but there's nothing. The record is completely devoid of any reference to this as an alphanumeric keyboard in terms of a 12-key digital mobile phone keypad of the type that Mr. Schor was holding up moments ago. I really think that I've sped through this pretty quickly, but if there's any other questions, I don't believe I have any more questions. Thank you, Mr. Sostek. Thank you, Judge. Mr. Schor, you have a little less than two minutes. The end of the specification reads, although the invention has been described with reference to a particular embodiment, this description is not meant to be construed in a limiting sense. Various modifications of the disclosed embodiments as well as alternative embodiments of the invention will become apparent to persons skilled in the art upon reference to the description of the invention. And the last line says, it's contemplated that the appended claims will cover any modifications and embodiments that fall within the scope of the invention. Absolutely. The question is, what is the scope of the invention? The scope of the invention is anything as to this element with an alphanumeric keyboard. In other words, this boilerplate at the end has not broadened the scope of the invention, has it? The claims define the invention. Exactly. And the claims say alphanumeric keyboard. They don't say full. They don't say substantially complete. They say simply alphanumeric keyboard. And I think this case is most closely analogous to the EPAS Technologies versus 3Com case, 343F1364, where they had the word card that they had to determine what card meant. And the trial court said card means something the size of a credit card or about the size of a credit card. And every example in the specification was something about the size of a credit card. Thin is a credit card, approximately the size of a credit card. It used the terms. That was a dictionary case. We pulled rectangular out of the dictionary. You're probably right. It was a, well, we did it. But that was before Phillips. And we've since said we don't use dictionaries that way anymore. Well, I think that even after Phillips, though, when you have a plain and ordinary term, and there's plenty of cases post Phillips where it's a plain ordinary meaning. We have a plain ordinary meaning of alphanumeric. We have a plain ordinary meaning of keyboard. And our expert went into those in some detail. And their own patents used that term. And if I can have one more moment to conclude, I think it is very important here that this specification says nowhere in it we are defining alphanumeric keyboard. There are no words of definition. There are no statements of definition. And the term or the phrase that the court used incompletely and misquoted is filled with conditional languages. And even the language in Column 2 that you quoted to me says things like most telephones, some and most, and typically. It doesn't say exclusively. And so if you're going to define, give a limiting, excluding definition, the case law is clear even after Phillips. There has to be a clear intent of the patentee to do that. And I don't believe that they have come close to showing that there's been any clear intent for a limiting definition. Thank you, Mr. Schor.